Frank J. NOSTRAME, Plaintiff,

v.

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.

78 Civ. 2637–CSH.

United States District Court, S. D. New York.

Dec. 19, 1980.

Judge, Livoti & Bernstein, New York City, for plaintiff; Thomas E. Judge, Jr., New York City, of counsel.

Ernest J. Williams, New York City, for defendant; Sandra Craig, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff seeks a declaratory judgment that defendant, his former employer, is in violation of the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and that plaintiff retains rights in a pension plan adopted by defendant according to the provisions of ERISA. Jurisdiction is based on 29 U.S.C. § 1132. Both sides move pursuant to F.R.Civ.P. 56 for summary judgment. For the reasons stated, plaintiff's motion is denied and defendant's cross-motion is granted.

### I.

The material factual issues are not in dispute.

Plaintiff Frank J. Nostrame commenced employment with defendant Consolidated Edison Co. of New York, Inc. ("Con Ed"), a public utility, on June 1, 1964. Plaintiff voluntarily resigned from Con Ed, where he then worked as an attorney in defendant's legal department, on February 28, 1975. He was thirty-seven years of age and had completed ten years and nine months of continuous service.

At the time plaintiff resigned, Con Ed had in existence its Pension Plan for Retirement for Age ("Retirement Plan"), effective July 1, 1953, as amended April 1, 1973. Under the Retirement Plan, an employee could elect to retire at any one of three times: at age 45 or over, the early optional retirement age, provided that his years of service at Con Ed when added to his age totaled 75; at age 62, the stated retirement age; and at age 65, the mandatory retirement age.[1] Eligibility for pension benefits upon retirement was determined under the following formula set forth in Section III of the Retirement Plan:

"(A) Pensions (1) Every employee who shall have attained or passed stated retirement age and whose years of accredited service shall be ten (10) years or more and which when added to his years of age shall total not less than seventy-five (75) shall be granted a gross pension . . ."

An employee qualifying for early optional retirement was also granted a pension in accordance with the above formula, subject, however, to a discount factor.[2] Plaintiff concededly does not qualify for a pension under these provisions. He had neither attained the age of 45 required for early retirement nor did his years of service, approximately ten, when added to his age at

1. The provisions regulating retirement are stated as follows in Section II of the Retirement Plan:

"(A) *Normal Retirement* Any employee, irrespective of length of service, who shall have attained the age of sixty-two (62) years (hereinafter referred to as the 'stated retirement age') but who shall not have attained mandatory retirement age, shall, upon filing a written election, or if his regular job is no longer available, or if he has become disabled, be retired, hereunder, from the service of the Company. An employee's election shall not be revocable after the effective date of retirement.

"(B) *Mandatory Retirement* Each employee, irrespective of length of service, who shall have attained age sixty-five (65) (hereinafter referred to as 'mandatory retirement age') shall be retired from the service of the Company.

"(C) *Early Optional Retirement* Any employee who shall have attained the age of

forty–five (45) or more years and who shall have completed such years of accredited service which when added to his years of age shall total not less than seventy-five (75) shall, upon filing a written election, be retired from the service of the Company. Such election shall not be revocable after the date of such employee's retirement."

2. Specifically, Section III(A)(5) of the Retirement Plan provides for pension benefits as follows:

"(5) Every employee who shall elect early optional retirement under Paragraph (C) of Section II shall be granted an annual gross pension calculated in accordance with Paragraphs (A)(1) and (A)(2) above, multiplied by the appropriate discount factor in Table A corresponding to the number of months between the employee's projected date of retirement after his 62nd birthday and his early optional retirement date."

retirement, 37, equal the total 75 required to collect benefits under the Retirement Plan.

The Retirement Plan, however, did not conform to the provisions of ERISA in that, *inter alia*, it did not provide for vesting of pension rights in employees with more than ten years of service. ERISA requires that:

> "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection."

29 U.S.C. § 1053(a).

Under paragraph 1, an employee's rights in benefits derived from his own contributions must be nonforfeitable. Under paragraph 2, an employer is given the option of electing one of three types of vesting plans under which a participant obtains a nonforfeitable right to a certain percentage of his accrued benefits derived from employer contributions. To satisfy these requirements, defendant adopted the Consolidated Edison Pension and Benefits Plan ("the ERISA Plan"). Pursuant to 29 U.S.C. § 1053(a)(2)(A), section 6(A) of the ERISA Plan states that "[a] participant who completes ten (10) or more years of vesting service will be entitled to a nonforfeitable right of one hundred percent (100%) of his accrued pension payable from age sixty-five (65)."

The ERISA Plan was effective August 1, 1975, some five months after plaintiff resigned from Con Ed. Defendant elected to adopt the ERISA Plan earlier than January 1, 1976, the date required by ERISA,[3] in order to comply with an agreement entered into with the union representing its employees; that agreement was reached some time after plaintiff resigned from Con Ed. Notification and a summary of the ERISA Plan were given to Con Ed employees on August 11, 1975; qualification of the ERISA Plan by the Internal Revenue Service was obtained in February of 1976.

Plaintiff states that at the time he tendered his resignation, he was aware of the general provisions of ERISA. He also knew of the particular ERISA requirement that pension rights must vest in employees with a minimum of ten years of service. Affidavit of Frank J. Nostrame, sworn to Aug. 1, 1979, at ¶ 4. However, plaintiff avers that he was unaware Con Ed planned to adopt or was in the process of adopting a new pension plan; "[t]his was not discussed with me by any of my supervisors nor was I given either a formal or informal notice." *Id.* at ¶ 5.

Subsequent to his resignation, plaintiff contacted Con Ed officials about his pension rights. He was informed that although he would have had a vested pension right had he still been employed by Con Ed on August 1, 1975, the effective date of the ERISA Plan, he had left the company five months too early to qualify under the ERISA Plan. Applying the terms of the Retirement Plan in effect on February 28, 1975, the date plaintiff's employment with Con Ed was terminated, plaintiff was denied any pension benefits.

This action, seeking a declaratory judgment that defendant is in violation of ERISA and that plaintiff is entitled to pension benefits, is before the Court on the parties' respective motions for summary judgment. Neither party contests the computations leading to the determination that plaintiff is ineligible to recover pension benefits under the Retirement Plan. Rather, plaintiff claims that had he been informed prior to his resignation that defendant was in the process of adopting a pension plan conforming to the requirements of ERISA and that by leaving when he did he would "forfeit [his] prospective vested rights," he would have continued his employment with Con Ed. Nostrame Affidavit, at ¶ 7. Specifically, plaintiff contends that he was entitled to the protection of ERISA at the time of his resignation and that defendant had a duty to disclose to him the implications of his resignation under existing and prospective pension plans.

---

**3.** 29 U.S.C. § 1061; *see* notes 5–6 *infra*.

Defendant contends that plaintiff is not a "participant" in a pension plan within the meaning of the pertinent sections of ERISA and hence is not afforded statutory protection. Furthermore, defendant argues that to uphold plaintiff's position would require retroactive application of ERISA in direct contravention of Congressional intent and relevant case law. Consequently, defendant contends that this Court lacks subject matter jurisdiction and that, in any event, there was no breach of fiduciary duty. I consider these arguments in turn.

## II.

The complex regulatory scheme found in ERISA was adopted in part to correct perceived inadequacies in existing pension plans and to assure "the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001. To fulfill these purposes, ERISA requires, *inter alia*, that fiduciaries of pension plans conform to prescribed standards of conduct; that periodic disclosure and reporting be made to plan participants and beneficiaries; and that pension plans incorporate minimum vesting provisions. In addition, ERISA provides appropriate remedies for violations of the Act.

■ 29 U.S.C. § 1132, the civil enforcement section of ERISA, empowers a "participant" to bring a civil action under ERISA in federal court. A "participant" is defined in 29 U.S.C. § 1002(7) to be:

> ". . . any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."

Despite defendant's vague allegations to the contrary, it is apparent that plaintiff is a participant in a plan within the meaning of 29 U.S.C. §§ 1002 and 1132. Plaintiff was employed by Con Ed on January 1, 1975, the effective date of § 1002. *See* 29 U.S.C. § 1031. Although plaintiff may not have been a participant in defendant's ERISA Plan because plaintiff was no longer in defendant's employ when it was adopted, he is clearly a former employee of defendant who may become eligible to receive pension benefits from Con Ed and hence has standing to sue under § 1132. *See Tucci v. Edgewood Country Club*, 459 F.Supp. 940 (W.D.Pa.1978); *cf. Martin v. Bankers Trust Co.*, 417 F.Supp. 923 (W.D.Va.), *aff'd*, 565 F.2d 1276 (4th Cir. 1977) (employee terminated *prior to effective date of ERISA* is not a participant within meaning of 29 U.S.C. §§ 1002, 1132).

Nevertheless, although § 1132 provides a "participant" with a federal forum in which to prosecute his claims, it neither creates a cause of action nor defines substantive rights. *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888, 892 (1st Cir. 1978). As the Court in *Cowan* stated, "For these we must look elsewhere. . . . In short, although § 1132 may have become effective on September 2, 1974, federal jurisdiction under that section can exist here only if the substantive claims [plaintiff] now asserts can be identified as arising under other provisions of federal statutory or common law that existed at the time such claims arose." *Id.* at 892–93.

Plaintiff contends that the requisite federal statutory law is found in "the spirit and letter of ERISA's provisions with respect to disclosure." Plaintiff's Reply Brief at 2. According to plaintiff, the "spirit" of ERISA is embodied in the policy statements set forth in 29 U.S.C. § 1001[4] and in the

---

4. 29 U.S.C. § 1001, reflecting Congressional findings and policy underlying ERISA, provides in pertinent part:

"(a) The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; . . . that the continued well-being and security of millions of employees and

their dependents are directly affected by these plans; . . . that they have become an important factor affecting the stability of employment and the successful development of industrial relations; . . . that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and

references in the definitional section, 29 U.S.C. §§ 1002(1), (2), to "heretofore or . . . hereafter established" pension plans. Plaintiff claims that by making these sections effective on September 2, 1974, the date ERISA was enacted, Congress manifested a clear intent to immediately establish rights in employees and impose duties on employers. The "letter" of ERISA is perceived in 29 U.S.C. § 1022, which requires that a summary description of any employee benefit plan must be furnished to participants under guidelines set forth in § 1024(b), and must describe, among other things, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefit." Plaintiff claims that his resignation five months prior to Con Ed's adoption of the ERISA Plan was a circumstance disqualifying him from eligibility in that plan within the meaning of § 1022 and that defendant therefore had a duty under ERISA to warn him of this fact. Plaintiff urges that to hold otherwise would nullify Congressional intent to protect employees in that it would permit employers "to affect the rights of participants by [allowing] participants to resign, retire or otherwise terminate employment in a way which would affect their pension rights while the em-

ployer had sole access to exclusive knowledge which should have been disclosed to the participants." Plaintiff's Brief, at 6.

Defendant contends that neither a federal statutory nor common law basis for plaintiff's claims exist. Specifically, defendant argues that despite allegations of nondisclosure and breach of fiduciary duty, plaintiff is in essence relying on the vesting provisions of § 1053 as creating his substantive rights. Because plaintiff was no longer employed by Con Ed when the ERISA Plan was adopted, defendant urges the conclusion that plaintiff is precluded from relying on § 1053 to support his cause of action. Moreover, defendant maintains that plaintiff is not within that class of persons protected by §§ 1022 and 1024 because disclosure and reporting to participants were required only after adoption of a plan. In addition, defendant argues that no duty to disclose was imposed by means of contract or conduct and that, in any event, plaintiff is unable to prove that he relied on any alleged failure to disclose. Finally, defendant states that it was unaware at the time plaintiff resigned that the ERISA Plan would be adopted five months later and that the disclosure plaintiff seeks would therefore have been impossible.

their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; . . . that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that is is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

"(b) It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

"(c) It is hereby further declared to be the policy of this Act to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance."

■ An examination of ERISA and Congress' careful imposition of deferred compliance dates reveals that plaintiff has failed to state a cause of action under any of the specific provisions of ERISA. 29 U.S.C. § 1053 provides no aid to plaintiff because it cannot be applied retroactively, as would be required under the facts of this case. The vesting provisions contained in § 1053 do not protect the pension rights of an employee who terminated his employment prior to the effective date of § 1053.[5] *See Haeberle v. Board of Trustees of Buffalo Carpenters, etc.,* 624 F.2d 1132 (2d Cir. 1980); *Riley v. MEBA Pension Trust,* 570 F.2d 406 (2d Cir. 1977); *Haas v. Manufacturers Hanover Trust Co.,* 473 F.Supp. 212 (S.D.N.Y.), *aff'd,* 614 F.2d 1287 (2d Cir. 1979), *cert. denied,* 445 U.S. 963, 100 S.Ct. 1652, 64 L.Ed.2d 239 (1980); *Schlansky v. United Merchants & Manufacturers, Inc.,* 443 F.Supp. 1054 (S.D. N.Y.1977); *Martin v. Bankers Trust Co.,* 417 F.Supp. 923 (W.D.Va.1976), *aff'd,* 565 F.2d 1276 (4th Cir. 1977). This is true whether employment was terminated prior to September 2, 1974, the date ERISA was enacted, or as late as one day before the effective date of ERISA's vesting requirements. *Haeberle, supra,* 624 F.2d at 1137. The effective date of § 1053 in this case is no earlier than August 1, 1975.[6] Therefore plaintiff, who resigned from Con Ed five months before the ERISA Plan was adopted by Con Ed, cannot now claim that he was entitled to and denied vested pension benefits.

■ Plaintiff runs afoul of a similar problem under § 1022. Although § 1022 requires that plan participants and beneficiaries be given the type of information that plaintiff allegedly lacked when he resigned from Con Ed, compliance with § 1022 was deferred under § 1024(b) until a plan was adopted.[7] *See* 29 C.F.R. §§ 2520.104–3, –6. Hence, Con Ed was under no statutory duty of disclosure on the date plaintiff resigned. *See Schlansky, supra,* 443 F.Supp. at 1064. Furthermore, defendant was not contractually obligated to make disclosure to plaintiff nor did it acquire such a duty by making affirmative negligent misrepresentations and subsequent omissions. *See id.* at 1059–60, 1062. Defendant was merely silent.

■ Plaintiff's attempt to circumvent these conclusions by alleging that defendant's conduct violates both the spirit of ERISA and other unspecified sections of the statute would require application of ERISA in a manner unintended by Congress. As the Second Circuit stated under somewhat different facts:

"It has been suggested that after January 1, 1975 [the effective date of the plan administrators exercised their right of early election.

---

**5.** Although ERISA was enacted on September 2, 1974, well before plaintiff resigned from his position at Con Ed, most of its provisions were given a deferred effective date. 29 U.S.C. § 1061 sets forth the effective dates for § 1053. Section 1061(b)(2) states that "in the case of a plan in existence on January 1, 1974, this part shall apply in the case of plan years beginning after December 31, 1975." Plan administrators were also given the option of electing to comply earlier, in which case ERISA would apply "to the first plan year to which such election applies and to all subsequent plan years." 29 U.S.C. § 1061(d).

**6.** In the case at bar, Con Ed had a plan in effect on January 1, 1974, and hence the latest effective date applicable to it is the first day of a plan year on or after January 1, 1976. In any event, the earliest date on which the ERISA vesting provisions could be effective as to Con Ed was August 1, 1975, the date on which the

**7.** 29 U.S.C. § 1024(b) provides in pertinent part:

"Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:

"(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary, plan description, and all modifications and changes referred to in section 1022(a)(1) of this title—

"(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or

"(B) if later, within 120 days after the plan becomes subject to this part."

fiduciary provisions contained in Part 4, 29 U.S.C. §§ 1101–14], new federal standards of fairness must apply with respect to charges of breach of fiduciary duty not explicitly covered by Part 4 of ERISA and that federal courts should look to the whole of ERISA, including the vesting provisions which had not yet become effective, as a source of federal policy.... We have no difficulty with the first branch of the argument, cf. *Azzaro v. Harnett*, 414 F.Supp. 473 (S.D.N.Y.1976, aff'd 553 F.2d 93 (2d Cir. 1977), but we know of no federal standard that would here be applicable other than the arbitrary or capricious one already discussed.... With respect to the second branch of the argument, care must be taken not to subvert the intention of Congress to postpone the effective date of the vesting provisions in order to afford a fair opportunity to bring plans and their application in line with the new vesting requirement." *Riley, supra*, 570 F.2d at 413 (citations omitted).

Applying the "new federal standards of fairness" to the case at bar, plaintiff does not contend that the plan administrators acted arbitrarily or capriciously in denying him a pension and he could not do so. Nor is this the "truly shocking case [in which] a court might properly condemn the denial of a pension that would not have been arbitrary or capricious or in violation of any specific fiduciary provision of ERISA but would be contrary to the vesting provisions even though it preceded the effective date of the latter." *Id.* It is uncontroverted that, at the time plaintiff resigned, defendant was unaware that it would elect to adopt a plan conforming to ERISA earlier than required by the statute; that decision was made only as a result of the collective bargaining agreement entered into with the union representing Con Ed employees *after* plaintiff left Con Ed. Consequently, defendant's culpability, if any, lies in the fact that it did not tell plaintiff of the general provisions of ERISA. But plaintiff, by his own admission, knew of these provisions and nevertheless resigned. Hence, it is impossible on this record for plaintiff to prove reliance on or prejudice from defendant's actions or omissions. *Compare Cawley v. NMU Pension and Welfare Plan*, 457 F.Supp. 301, 306–07 (S.D.N.Y.1978). Even if he were ignorant of ERISA, acceptance of plaintiff's position would result in imposition of liability upon defendant for following the specific disclosure requirements of §§ 1022, 1024. Such an anomaly was clearly not contemplated by Congress when it enacted ERISA and I decline to endorse it under the facts of this case.

## CONCLUSION

For the reasons stated, plaintiff Frank Nostrame's motion for summary judgment is denied. The cross-motion of defendant Consolidated Edison Co. of New York Inc. is granted.

The Clerk of the Court is directed to enter judgment in favor of defendant dismissing the complaint.

It is So Ordered.